**Maria Tavey UMHEY, Plaintiff,**

v.

**The COUNTY OF ORANGE, NEW YORK, and The Orange County Board of Ethics, Defendants.**

No. 95 Civ. 8454(WCC).

United States District Court, S.D. New York.

March 27, 1997.

James G. Sweeney, P.C., Goshen, NY (James G. Sweeney, of counsel), for Plaintiff.

Orange County Attorney, Goshen, NY (Richard B. Golden, of counsel), for Defendants.

**OPINION AND ORDER**

WILLIAM C. CONNER, Senior District Judge:

Plaintiff Maria Tavey Umhey ("Umhey"), a former Orange County Legislator, brought this action seeking damages under 42 U.S.C. § 1983 for pain, suffering, humiliation and embarrassment she suffered as a result of attempts by defendants Orange County and the Orange County Board of Ethics ("the

County") to compel her to produce her husband's tax records pursuant to a provision of the County Code of Ethics later held unconstitutional by the Supreme Court of Orange County. Defendants have moved for summary judgment pursuant to FED.R.CIV.P. 56, arguing that this action is barred by res judicata, or, in the alternative, that the Board of Ethics is not a person amenable to suit under 42 U.S.C. § 1983.

## BACKGROUND

Umhey was an Orange County Legislator from January 1, 1986 to December 31, 1993. In December 1990, the Orange County Legislature enacted a Code of Ethics known as Local Law No. 1 of 1991. The Code required certain County officials, including Umhey, to file annual financial disclosure statements that included financial information relating to their spouse, if any. Partial waiver was permitted by the Code upon request and a showing of "significant reasons."

In 1991 and 1992 Umhey filed her financial disclosure forms without including any information on her husband's income, stating that her husband refused to comply with the request because he believed it to be an invasion of his right to privacy. The Board denied her request for a waiver, and when she continued not to provide the information, she was notified her forms were incomplete. A hearing was held before a . Hearing Officer who found Umhey to be in violation of the Code of Ethics and recommended to the Board of Ethics that she resign from the legislature or be subject to a substantial fine for each year she failed to comply. The Board of Ethics assessed a $5000 per year fine and recommended to the County Legislature that they remove her from office. No action was ever taken on the recommendation and Umhey never paid the fine.

On August 18, 1993, Umhey filed a "Verified Petition/Complaint" in the Orange County Supreme Court against Orange County and the Orange County Board of Ethics. The proper procedural and legal characterization of the action that ensued has since become a central issue in this case. Plaintiff's "Notice of Petition" filed with her state complaint states in relevant part that:

... [U]pon the annexed Verified Petition/Complaint of the Petitioner/Plaintiff Maria Tavey Umhey ... the Petitioner will move this Court at the County Government Center ... for an order and judgment (1) pursuant to CPLR Article 78 annulling, reversing or otherwise setting aside the Decision and Determination of the Orange County Board of Ethics on the grounds that it is arbitrary and capricious, (2) that the assessment of a civil penalty is inconsistent with Local Law No. 1 and General Municipal Law Article 18, (3) for declaratory judgment that Local Law No. 1 and the Rules and Regulations promulgated thereunder are unconstitutional as applied to the Petitioner/Plaintiff for a failure to provide due process and for vagueness and (4) such other further and different relief that this Court may deem just, fair and proper.

(Notice of Petition, Goldman Aff. Exh. 3). The annexed Complaint states that "This appeal is made pursuant to the Rules and Regulations which provide for judicial review of the Board's final determinations under CPLR Article 78 and to challenge the constitutionality of Local Law No. 1 as applied to the Petitioner." (Compl.¶ 55).

The complaint alleged seven causes of action. Causes one through four, as well as seven, requested that the Board of Ethic's Decision be set aside or annulled as "arbitrary and capricious." The fifth and sixth requested a declaration that Local Law No. 1 is unconstitutional for vagueness and for violating Umhey's due process and privacy rights. There was no mention of § 1983 and no explicit request for damages in either the complaint or the Notice of Petition.

On March 29, 1995, Orange County Justice Emmett Murphy issued a Decision and Order finding that the exemption (waiver) provision of Local Law No. 1 rendered the law "fatally flawed" and thus that the Ethics Board's decision to deny her exemption was "arbitrary and capricious." The Court further released Umhey from the requirement of filing the required information until the exemption provision was altered to comply with due process, vacated the Board's finding that she willfully violated the Code of Ethics,

and vacated the Board's imposition of a $10,000 fine.

Subsequently, Umhey submitted a motion for attorney's fees and costs "under the authority of 42 U.S.C. § 1988." (Affirmation and Argument of James G. Sweeney in Reply upon Motion for Reasonable Attorney's Fees, ¶ 2). In his Affirmation, Umhey's attorney averred that "virtually the entire thrust of the of the the [sic] Umhey claim was a constitutional argument," (Affirmation ¶ 10), and that "it couldn't be clearer that the Umhey claims were specifically constitutionally based with procedural due process and right to privacy arguments at their heart. They are the very 'stuff' of a 42 U.S.C. § 1983 claim. They couldn't be more so." (*Id.* at ¶ 12). This motion apparently was never ruled upon and the County and Umhey reached a settlement on the amount of attorney fees immediately thereafter. (Def.Br. p. 6).

On October 4, 1995 Umhey filed this complaint requesting damages under 42 U.S.C. § 1983 for injuries she suffered as a result of the County's promulgation and attempted enforcement of the unconstitutional provision of the Ethics Code. The County has moved for summary judgment under Fed.R.Civ.P. 56, arguing first that the state court proceeding bars her claim under res judicata, and second that the County Board of Ethics is not a person amenable to suit under § 1983.

## DISCUSSION

Summary judgment is appropriate "only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact." *Cable Science Corp. v. Rochdale Village Inc.*, 920 F.2d 147, 151 (2d Cir.1990). A fact is material if, on the basis of that fact, "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In this case there are essentially no facts in dispute; the disagreement is purely legal.

*The State Action and Res Judicata*

While "[t]he full faith and credit clause of the Constitution of the United States requires a federal court to give the same preclusive effect to a state court judgment as would be given in the state in which it was rendered." *Davidson v. Capuano*, 792 F.2d 275, 277–78 (2d Cir.1986), (citing *Migra v. Warren City School District*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984)), and "New York Courts have adopted the 'transactional approach' to res judicata, holding that if claims arise out of the same 'factual grouping' they are deemed part of the same cause of action and the later claim will be barred without regard to whether it is based upon different legal theories or seeks different or additional relief," there are limitations to this rule. *Davidson*, 792 F.2d at 277–78. For example, it is clear that if the state court proceeding was purely an Article 78 proceeding it would not serve as res judicata to Umhey's current claim for damages, because, as the Second Circuit has explained:

> A New York plaintiff is not barred from seeking damages in federal court, on civil rights claims by reason of a prior judgment on the same underlying facts in an Article 78 proceeding requesting injunctive or affirmative relief. The reason is that damages are not available in these circumstances in an Article 78 proceeding and therefore that action cannot give the damages relief demanded in a civil rights [suit]
> . . . .

*Davis v. Halpern*, 813 F.2d 37, 39 (2d Cir. 1987); *Moccio v. N.Y. State Office of Court Admin.*, 95 F.3d 195, 200 (2d Cir.1996). However Umhey's prior proceeding was a "hybrid" Article 78 and declaratory judgment action. It appears that the declaratory judgment action must have been brought under § 1983, or at least be a "§ 1983 type" action.[1] Thus, the central issue for the first part of

---

1. This conclusion is not seriously contested by the parties. It is bolstered by Umhey's request for attorney's fees in that action. Attorneys fees, (unless they are sought against the state itself), are ordinarily not available under Article 78. *See Health Care Plan, Inc. v. Bahou*, 92 A.D.2d 142, 459 N.Y.S.2d 497, 502 (4th Dep't, 1983), *aff'd as modified*, 61 N.Y.2d 814, 473 N.Y.S.2d 951, 462 N.E.2d 128 (1984). New York courts, however, have allowed recovery of such fees under § 1988 in cases where a prevailing plaintiff brought his action seeking to enforce federal civil

this motion is whether a prior § 1983 "type" declaratory judgment action, joined with an Article 78 proceeding, bars a subsequent § 1983 action for damages.

Defendants urge that Umhey's current § 1983 damage claim should have been brought with her earlier declaratory § 1983 claim and, because it was not, it is now barred by res judicata. *See Harborside Refrigerated Serv. v. Vogel,* 959 F.2d 368, 372 (2d Cir.1992) (Res judicata bars "not only parties from relitigating the same cause of action, but also 'prevents litigation of a matter that could have been raised and decided in a previous suit, whether or not it was raised.' ") However, there is an exception to res judicata for declaratory judgment actions recognized both by New York and federal courts. *Id.* (preclusive effect of the declaratory judgment is limited to the subject matter of the relief sought), (citing RESTATEMENT (SECOND) OF JUDGMENTS § 33, comment c (1982)). The RESTATEMENT explains that:

> *A plaintiff who wins a declaratory judgment may go on to seek further relief, even in an action on the same claim which prompted the action for a declaratory judgment. This further relief may include damages which had accrued at the time the declaratory relief was sought; it is irrelevant that the further relief could have been requested initially.*

RESTATEMENT (SECOND) OF JUDGMENTS § 33 (1995) (emphasis added).

We therefore conclude that declaratory judgments do not act as res judicata for further relief, such as damages. *Lynch v. Bailey,* 279 A.D. 650, 108 N.Y.S.2d 134, (1st Dep't), *aff'd,* 304 N.Y. 669, 107 N.E.2d 591 (1952). The *Lynch* Court explained the rationale behind this exception:

> The defense of res judicata was properly stricken. No splitting of causes of action is involved. The prior action was for a declaratory judgment. In such an action a plaintiff does not seek to enforce a claim against the defendant. He seeks a judicial declaration of the rights of the parties for the purpose of guiding their future conduct. The court may refuse to entertain a declaratory judgment action and, where it does entertain it, the court may refuse to award all relief sought and relegate the parties to an independent action for such other relief. It may not be said therefore that plaintiff here could or should have sought his damages in the prior action. *That action merely established his rights and he is free to seek compensation from anyone who has violated those rights.*

*Id.,* 108 N.Y.S.2d at 135 (emphasis added). Thus, the County's argument that N.Y.C.P.L.R. § 103(c), (requiring that whenever a proceeding is brought in an improper form the court should convert it, by order, to a form proper for its prosecution), would have allowed Umhey to bring her constitutional claims is misguided. The Supreme Court did so convert the action—to add a § 1983 declaratory judgment claim.

*Reilly v. Reid,* 45 N.Y.2d 24, 407 N.Y.S.2d 645, 379 N.E.2d 172 (1978), relied upon by the County, is not to the contrary. In *Reilly,* the petitioner, a former attorney for the State Department of Environmental Conservation whose position was eliminated, brought an Article 78 proceeding seeking restoration to the abolished position with back pay. His claim was held barred by a previous Article 78 proceeding he brought seeking appointment to a noncompetitive or exempt position; this claim had been denied. *Reilly* did not involve the exemption to res judicata for declaratory judgments at issue here—petitioner's previous action was not one for a declaratory judgment, but for affirmative relief.[2] Moreover, the Reilly court

---

rights, even though he did not specifically invoke § 1983. *Harradine v. Bd. of Supervisors,* 73 A.D.2d 118, 425 N.Y.S.2d 182, 187 (4th Dep't 1980). Umhey's attorney's application to the Orange County Supreme Court for attorney's fees was brought under 42 U.S.C. § 1988, as discussed supra; and § 1988 only permits the recovery of attorneys fees by parties prevailing on certain enumerated federal statutory constitutional claims, including § 1983. In that Applica-

tion, Umhey's attorney states, for example, that her state claims were "the very 'stuff' of a 42 U.S.C. § 1983 claim. They couldn't be more so." (*Affirmation* at 12). Thus we are confident in finding that the declaratory action was in the nature of a § 1983 action.

**2.** Reilly's previous Article 78 proceeding, although its precise nature is not specified, appears to have been a mandamus proceeding.

found that since Reilly lost the first action, the second action was barred by collateral estoppel as well as res judicata. As discussed *infra*, collateral estoppel does apply to prior declaratory judgments. *Moccio*, 95 F.3d at 200, (*citing Giakoumelos v. Coughlin*, 88 F.3d 56, 58 (2d Cir.1996)); *see* RESTATEMENT (SECOND) JUDGMENTS § 33, comment b (1995) ("If a declaratory judgment is valid and final, it is conclusive with respect to the matters declared, as to all person who are bound by the judgment."). Thus, a losing plaintiff cannot hope to relitigate liability by simply requesting different relief in federal court.[3]

In its reply, the County attempts to avoid the consequence of the declaratory judgment action exemption by arguing that Umhey's state action was "a Declaratory Judgment action, an Article 78 action *and a civil rights claim under 42 U.S.C. § 1983.*" Def.Reply Br. p. 2 (emphasis added). While this characterization is technically correct, it is misleading. The action was properly a "hybrid" Article 78 (apparently certiorari) proceeding and a § 1983 declaratory judgment action— no damages were sought under § 1983.

Next, relying upon language in *Harborside*, the County argues that the since her prior proceeding was not only one for declaratory relief, but was joined with her Article 78 proceeding, the declaratory judgment exemption should not apply. *See Harborside*, 959 F.2d at 372 ("Many jurisdictions recognize an exception to ordinary res judicata principles where, as here, the prior action involved only a request for declaratory relief.") (emphasis added by the County). The cases relied upon by the Court in *Harborside* support a qualified version of this argument. For example, the Eighth Circuit held in *Minneapolis Auto Parts Co. v. City of Minne-*

apolis, 739 F.2d 408, 410 (8th Cir.1984) that the declaratory judgment exception did not apply where the plaintiff had asked for coercive relief in the prior proceeding. There, in addition to requesting a declaration that Minneapolis' denial of plaintiff's application for a permit to run a used auto parts store was "unreasonable, arbitrary, capricious, unlawful, and void," plaintiff asked for an order directing the city to grant his application and an injunction preventing the city from interfering with its use of the property. *Id.* The court explained, quoting the district court below, that:

> The language of the RESTATEMENT (SECOND) § 33, comment c indicates that the traditional rule [of limiting the claim preclusive effect of a declaratory judgment] contemplates a situation where the first judgment is declaratory only. Comment c says, "When a plaintiff seeks *solely* declaratory relief, the weight of authority does not view [the plaintiff] as seeking to enforce a claim against defendant." *Id.* (emphasis added). The comment further observes that, "A declaratory action is intended to provide a remedy that is simpler and less harsh than coercive relief...." *Id.* The existence of a difference between declaratory and coercive relief is also evidenced by the following: "[T]he court's exercise of discretion to allow a declaratory action *when a damages or injunctive remedy could have been pursued* can be viewed as an express reservation of all issues not included in the declaratory proceeding." *Id.* (emphasis added).

*Id.* (quoting District Court Memorandum and Order at 9 (D.Mn. April 30, 1984)); *see also Horn & Hardart Co. v. Nat'l Rail Passenger Corp.*, 843 F.2d 546, 549 (D.C.Cir.1988)

---

**3.** While there are cases finding, or suggesting in dicta, that a subsequent federal civil rights claim is barred, under the doctrine of collateral estoppel or even res judicata, by a prior Article 78 proceeding where the constitutional issue was raised, *see, e.g., Gargiul v. Tompkins*, 790 F.2d 265, 272 (2d Cir.1986), (Where constitutional issue was actually raised in an Article 78 proceeding lost by plaintiff, plaintiff is barred from bringing § 1983 action), the outcome of many (if not all) of these cases can be interpreted as consistent with the rule we follow today. First, the cases we found involved plaintiffs who lost

their prior constitutional claims and were trying in the later proceeding to reverse that loss and perhaps seek additional relief. These later actions would be barred under our logic, not by res judicata if no coercive relief was sought in the prior proceeding, but by collateral estoppel. *See, e.g. Scott v. Major*, (No. 89 Civ. 690) 1989 WL 148667 at *4 (N.D.N.Y.1989). Moreover, these cases did not discuss the exception to res judicata for declaratory judgments, and may have overlooked the issue, since it was not outcome determinative.

(though traditional rule of claim preclusion may apply to bar later actions where plaintiff's original action seeks coercive or injunctive relief, here, contrary to plaintiff's contention, preclusion did not apply since defendant had not filed an answer and was thus not required to file compulsory counterclaims).

Thus, we must determine whether Umhey's prior action sought coercive or injunctive relief. As discussed above, in addition to the two declaratory claims, the other five of Umhey's seven causes of action requested that the Board of Ethic's Decision be reversed and set aside as arbitrary and capricious since it conflicted with state law. These requests were granted—the Appellate Division released Umhey from complying with the filing requirements until the exemption is reformed to comply with due process, vacated the Decision finding her in violation of the Code of Ethics and assessing a fine of $10,000, and declared the provision at issue to be unconstitutional. (*See* Supreme Court Decision and Order, at Golden Aff. Exh 1). While we were unable to find a definition of "coercive relief," our research revealed that remedies such as injunction or mandamus are clearly considered coercive. *See Oneida Indian Nation of N.Y v. State of N.Y.*, 520 F.Supp. 1278, 1295 (N.D.N.Y.1981), *aff'd in part and rev'd in part on other grounds*, 691 F.2d 1070 (1982); *Stolberg v. Caldwell*, 423 F.Supp. 1295, 1301 (D.Conn.1976). Whether damages, which are clearly "compensatory", are also "coercive" we were not able to determine. However, since no damages were sought in Umhey's state proceeding, we need not decide the question. What we must decide is whether the Supreme Court's decision vacating the Board of Ethics' decision was "coercive."

The Supreme Court's decision on the Article 78 claims did not require the payment of any monies by the County, nor did it order the County to change the law or even enjoin the county from enforcing the law against

others. It merely vacated the decision and exempted Umhey from having to comply with the law. While it can be argued that the declaratory judgment itself, holding the provision unconstitutional, was in practical effect "coercive" since the County would be ill-advised to attempt to enforce the provision after the judgment, this clearly would be an incorrect analysis, in light of the wording of the exception itself, which exempts declaratory judgments from preclusive effect unless "coercive or injunctive" relief is sought. Clearly, the exception makes a distinction between a declaratory judgment and "coercive or injunctive" relief. We think that a similar, though technical, distinction exists between a remedy that merely vacates a decision, (in effect, declaring it to be invalid), and one that awards damages or commands a defendant to do something or refrain from doing something. We are influenced here by the Second Circuit's firm commitment to the importance of allowing plaintiffs to seek damages for violations of their civil rights, manifested in *Davis, supra,* despite their having sought redress against such violations in a prior Article 78 proceeding. *Davis,* 813 F.2d at 39 (a prior Article 78 proceeding does not bar a prevailing plaintiff from seeking damages in a later § 1983 action). Thus, despite the additional relief sought in the Article 78 proceeding, we conclude that the declaratory judgment exception should apply here.[4]

In further support of its argument that we should not apply the exemption, the County urges that the policy reasons behind allowing the exception, which include reducing litigation and conserving judicial resources by clarifying "the legal relationship of the parties before they have been disturbed thereby tending towards avoidance of full blown litigation," *Id.,* are not present in this situation. The County characterizes Umhey's state action as having the "sole purpose" of "undo[ing] what was already done, not avoid[ing] full blown litigation," and argues that the declaratory claim was but a "predi-

---

4. This exception is not without its critics. Most notably, Wright and Miller, while noting that the "traditional rule" permits recovery of coercive relief in a second action following a declaratory judgment action, criticize the rule as entailing "manifest costs in terms of efficiency, reliance and repose." 18 C. WRIGHT, A. MILLER AND E.

COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION § 4446 (1981) at p. 402. They suggest the better result would be to require the plaintiff to seek that additional relief in the first proceeding, or be barred. *Id.* The exception, however, appears to be alive and well in the Second Circuit. *See Harborside, supra.*

cate in furtherance of Plaintiff's claim for her civil rights violations, which she also asserted in the prior state action."

We do not agree with the County's characterization of Umhey's declaratory judgment claim as simply a predicate to her present civil rights claim—it *was* her civil rights claim. Umhey sought a declaration that the waiver provisions of the Code of Ethics were unconstitutional, a perfectly legitimate goal to protect her and other Orange County officials from being subjected to future attempts to enforce that portion of the Code. While her decision not to seek the remedy of damages at that time, in retrospect, did not save much court time, it did narrow the issue somewhat. The Supreme Court was not required to hear and pass upon proof of damages; had Umhey not prevailed, it would never have been necessary to address that issue. She won, however, and we must address it now. The proceedings in this court should not be terribly duplicative, however, since we note, without ruling[5], that it appears likely that the parties' claims will be governed by collateral estoppel, or issue preclusion, since collateral estoppel applies to § 1983 actions. *Moccio*, 95 F.3d at 200. Under New York law, "collateral estoppel will apply only if (1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *Id.* Should this test be met in this case, the state court's finding of unconstitutionality would be controlling, leaving only issues such as immunity and damages. *See Mindich Developers, Inc. v. Hunziker*, 622 F.Supp. 1513 (S.D.N.Y.1985).

Thus, because Umhey's prior state action did not request coercive or injunctive relief, she is entitled to rely upon the exception to res judicata for declaratory judgments, and her current damages claim is not barred. *Whether the County of Orange Board of Ethics is a "Person" under 42 U.S.C. § 1983*

■ The County argues, relying only upon a very general reference to *Monell v. Dep't*

of Social Serv. of New York et al.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (reversing precedent to hold that municipalities can be liable under § 1983 for official policy or custom that violates the constitution), that there is no basis to conclude that the County Board of Ethics is a "person" liable to suit under § 1983. Employing an extremely inappropriate analogy, Umhey argues that refusing to cast responsibility upon the "human agents who chose, with great finality, to carry out that policy with a vengeance against Mrs. Umhey" (a.k.a. the Board), would be "akin to saying that the German High Command during World War II was responsible for the monstrous human trespasses committed during the Holocaust, but the officers who carried out that policy were not." (Pl.Br. p. 11). In addition to being semantic overkill, the analogy does not work logically, as plaintiff has not named any individual officers or Board members as responsible parties in her complaint. She has merely named a collective entity, the Orange County Board of Ethics. We fail to see how the Board differs from the County itself in any meaningful way.

The Orange County Board of Ethics was created under authority of N.Y.MUN.CORP.L. Art. 18, § 808 (McKinney 1997), which permits counties and other municipalities to create and fund Boards of Ethics. When faced with a similar question regarding the amenability to suit of local police departments, "the numerous courts that have considered the question of whether a municipal police department is a proper defendant in a § 1983 action have unanimously reached the conclusion that it is not." *PBA Local No. 38 v. Woodbridge Police Dep't*, 832 F.Supp. 808, 825 (D.N.J.1993), (*collecting cases, including Martinez v. Winner*, 771 F.2d 424, 444 (10th Cir.1985) (While the City and County of Denver will remain as defendants, the 'City of Denver Police Department' is not a separate suable entity, and the complaint will be dismissed as to it."), *opinion modified on denial of rehearing*, 778 F.2d 553 (prosecutor should have been found absolutely immune), *cert.*

---

**5.** This issue was not raised by the parties and without the benefit of argument on it, we decline to rule on it at this point.

**532**

granted, judgment vacated sub nom, *Tyus v. Martinez*, 475 U.S. 1138, 106 S.Ct. 1787, 90 L.Ed.2d 333 (1986) (court directed to consider mootness)); *Johnson v. City of Erie, Pa.*, 834 F.Supp. 873, 879 (W.D.Pa.1993) (City police department is merely subunit through which city fulfills its policing functions); *but see, e.g., Feerick v. Sudolnik*, 816 F.Supp. 879, 887 (S.D.N.Y.) (where city itself was not a party, and without discussion of what types of defendants are separate entities capable of being sued, the court found the NYPD and IAD (Internal Affairs Department) to be policymakers and thus proper defendants), *aff'd*, 2 F.3d 403 (2d Cir.1993) (table).

We agree with the reasoning of the New Jersey District court and find that the Board of Ethics is not an entity separate from the County itself that is capable of being sued. It is merely a subunit of the County. Thus, where the County itself has already been named as a defendant, the Board's presence in the suit is unnecessary. We therefore grant the County's motion to have the Board of Ethics stricken as defendants in this action.

### CONCLUSION

Since we find that Umhey's current action is not barred by res judicata, to the extent that the County seeks dismissal of this action on that ground, we deny the County's motion for summary judgment. However, to the extent that the County requests that the Orange County Board of Ethics be dismissed, we grant their motion, finding that they are not a separate legal entity capable of being sued under § 1983, but are merely a subunit of the County of Orange.

SO ORDERED.