■ EDMUND O'CONNELL et al., Respondents, v ALBANY MEDICAL CENTER HOSPITAL, Appellant. — Appeal from a judgment of the Supreme Court in favor of plaintiffs, entered April 4, 1983 in Albany County, upon a verdict rendered at Trial Term (Marinelli, J.). ¶ Plaintiff Edmund O'Connell, who was 42 years of age on September 23, 1977, the date of his accident herein, operates a dairy farm in the Town of Berne, Albany County. At about 12:00 noon on that date, while he was operating his tractor along a fence row in a neighbor's field, plaintiff was severely injured when a limb of a tree rode up through the tractor, penetrated the groin area of his right leg and ejected him from the tractor. He dragged himself after the tractor, shut off the engine, and then dragged himself another 300 yards through the field to the side of the road, where he was observed by a neighbor, who summoned an ambulance. Plaintiff was then taken to the emergency room at defendant hospital, where he arrived at about 1:30 P.M. and was seen by a Dr. Pietrocola and another resident physician. He was given penicillin, a tetanus injection, Demerol and Cefadyl, a broad base antibiotic. ¶ At about 3:30 P.M., a culture was taken of plaintiff's wound by an infectious disease expert. Thereafter, he was removed to a room in the hospital, but no further direct medical attention was applied to the wound until 6:45 P.M., when he was taken to the operating room where the wound was cleaned, debrided and partially closed by a surgical resident at the hospital, Dr. Rifkin. The pathology report received the next day established that, at the time of the surgical procedures, the wound was already infected. A report on the culture taken at the time of admission was received on September 27, 1977, which indicated that the bacteria present in the wound was sensitive to at least 10 different antibiotics (or antimicrobials) but was insensitive to penicillin. However, none of the indicated sensitive antibiotics were administered to plaintiff until October 21, 1977, at which time he received Gentamicin. A skin graft on September 28, 1977 proved unsuccessful, and the hospital record indicated that at the time of the graft and thereafter, the wound was heavily infected. Additional skin grafts on October 5 and October

31, 1977 also proved unsuccessful. All four surgical procedures were performed on plaintiff by resident physicians of defendant hospital, apparently without consultation with attending physicians or surgeons. ¶ On November 3, 1977, plaintiff was discharged from the hospital with an open granulation wound with directions to return for treatment as an out-patient. He made one such visit and then came under the care of his own family physician. Plaintiff is left with a permanent disability to his right leg which limits his ability to perform all of his required duties, necessitating the employment of farm labor and thrusting additional farm chores upon his wife. After trial, the jury awarded plaintiff $150,000 in damages, and his wife $50,000 in her derivative action. This appeal by defendant ensued. ¶ Plaintiffs offered expert medical proof that defendant, through its physician employees, deviated from accepted medical standards in its treatment of plaintiff Edmund O'Connell in its emergency room on September 23, 1977, and also in failing to administer sensitive antibiotics until October 21, 1977, in the presence of known and obvious infection. Moreover, plaintiffs' expert was of the opinion that the attempted skin grafts were improper since it is an improper practice to close an infected wound. The expert also stated that in view of the dangerous consequences that could result from a wound in the area of the groin, a plastic surgeon should have been consulted. It was his further opinion that had the proper antibiotics been prescribed, they would have killed off the infection, increased the chances of a successful skin graft, shortened the patient's hospital stay and, probably, lessened any disability. ¶ In our view, this record demonstrates, by expert proof, that defendant's employees failed to follow proper and approved standards and practices in the care and treatment of plaintiff Edmund O'Connell. Accordingly, a finding of malpractice against defendant hospital is proper (see *Bing v Thunig,* 2 NY2d 656; *Bernstein v Greenfield,* 281 NY 77; see, also, *Mossman v Albany Med. Center Hosp.,* 34 AD2d 263, 264). Whether it is established that such malpractice was a proximate cause of plaintiffs' injuries and damages presents a more troublesome problem. In its charge to the jury, to which there were no exceptions or requests, the trial court instructed the jury on the issues of negligence and proximate cause, stating: "If you find that the hospital was negligent and that its negligence was the proximate cause of the failure of the September 28, 1977 and October 5, 1977 skin grafts and the subsequent October 31, 1977 skin graft, resulting in an injury to the plaintiff, and was the proximate cause of the plaintiff's present condition, then the hospital is responsible for the injuries that are a result of such negligence." ¶ Applying these instructions in their review of the expert testimony on both sides, the jury was presented with a question of fact as to proximate cause which they resolved in favor of plaintiffs. They could find from the testimony of plaintiffs' expert that there was a substantial possibility that plaintiff Edmund O'Connell's recovery would have been faster, less painful and less disabling but for the malpractice of defendant (see *Kimball v Scors,* 59 AD2d 984, mot for lv to app den 43 NY2d 648; *Kallenberg v Beth Israel Hosp.,* 45 AD2d 177, affd 37 NY2d 719). Since the question of proximate cause is a jury question, the jury alone may weigh conflicting evidence in determining the credibility of the weight to be accorded expert testimony (*Monahan v Weichert,* 82 AD2d 102; *Kallenberg v Beth Israel Hosp., supra,* p 180). ¶ Finally, in view of the severe disability from which plaintiff Edmund O'Connell suffers and the nature of his work as a dairy farmer, which now requires the employment of additional labor, we do not view his award herein as so disproportionate to the injury received as to not be within reasonable bounds (*James v Shanley,* 73 AD2d 752). When considering the derivative cause of action and the nature of the additional services to be performed by plaintiff wife, we are of a similar view as to her award. Finally, we find nothing to impair the quality, admissibility or

probative value of the testimony of plaintiffs' expert witness, whose eminent qualifications were passed upon by the trial court (*Matott v Ward*, 48 NY2d 455), and whose denial of the motion to set aside the jury's verdict pursuant to CPLR 4404 (subd [a]) was completely proper (*Mann v Hunt*, 283 App Div 140). ¶ Judgment affirmed, with costs. Mahoney, P. J., Kane, Main, Weiss and Harvey, JJ., concur.