**Roger F. O'MALLEY, Plaintiff,**

v.

**NASSAU COUNTY MEDICAL CENTER, the County of Nassau and Donald Eisenberg, Defendants.**

**No. CV 86–3595.**

United States District Court, E.D. New York.

May 25, 1988.

Nassau County Medical Center ("NCMC"), and Donald Eisenberg, Executive Director of NCMC, for allegedly depriving plaintiff of his constitutionally secured right to free speech in violation of 42 U.S.C. § 1983. Specifically, plaintiff seeks compensatory and punitive damages as redress for the alleged violation of his civil rights. Defendants move to dismiss the complaint for failure to state a claim, or for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(b)(6) and 12(c), respectively, or for an award of summary judgment under Fed.R. Civ.P. 56. Defendants move, in the alternative, for the exercise of federal abstention or for a stay of the action until the Article 78 proceeding now pending before the New York State Supreme Court, Appellate Division, Second Department, is resolved.

A brief examination of the relevant facts reveals that while O'Malley was employed by NCMC as a civil servant he reported to defendant Donald Eisenberg his belief that on several occasions his immediate supervisor was guilty of misconduct. After O'Malley was subsequently reassigned to another work area with decreased responsibilities and inferior office facilities, and upon O'Malley's perception of Eisenberg's inaction with respect to the allegations of management misconduct, O'Malley went outside the normal chain of command and detailed these allegations in a letter to Francis Purcell, Nassau County Executive, dated June 11, 1984. On or about February 1, 1985, defendant NCMC filed charges of insubordination against plaintiff and shortly thereafter suspended him.

Before a permanent civil service employee can be disciplined or terminated, he must receive a hearing. N.Y.Civ.Service Law § 75 (McKinneys 1983 and Supp.1988). Pursuant to the requirements of section 75, NCMC appointed Stevens, a Nassau County Police Department Inspector as a "deputy or other person" to conduct a hearing and make recommendations to NCMC for its review and final determination. Plaintiff objected to the appointment of Stevens as a hearing officer and, on February 25, 1985, he initiated an Article 78 proceeding in New York State Supreme Court to re-

---

Hershman & Leicher, P.C. by Harold Hershman, New York City, for plaintiff.

Michael T. Hopkins, Mineola, N.Y., for defendants.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Plaintiff Roger P. O'Malley brings this action against defendants Nassau County,

view the appointment. On May 6, 1985, the Article 78 proceeding was adjourned as premature.

Before the hearing officer completed his hearing, plaintiff commenced the instant action for monetary damages. After conducting the hearing, the hearing officer concluded that plaintiff had acted in an insubordinate manner and recommended that his employment be terminated. O'Malley was subsequently dismissed from NCMC on January 7, 1987, and on April 28, 1987, he filed for Article 78 review of the hearing and recommendation. That action is now pending before the New York State Supreme Court, Appellate Division, Second Department.

## I.

██ Defendants move for dismissal and for summary judgment on the ground that the insubordination hearing the NCMC conducted prior to O'Malley's termination has res judicata or collateral estoppel effect and thus bars plaintiff's recovery in this action. In addition to confusing claim preclusion, or res judicata, with issue preclusion, or collateral estoppel, defendants' argument that plaintiff is precluded entirely from commencing a federal action is without merit. In New York, an administrative hearing will not bar, on the grounds of claim preclusion, a federal civil rights action brought under 42 U.S.C. § 1983. *See Davis v. Halpern,* 813 F.2d 37 (2d Cir. 1987); *Giano v. Flood,* 803 F.2d 769 (2d Cir.1986); *Davidson v. Capuano,* 792 F.2d 275 (2d Cir.1986).

Defendants' next contend that the holding in *University of Tennessee v. Elliott,* 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986), supports their claim of issue preclusion. In *Elliott,* the Supreme Court held that "where a state agency 'acting in a judicial capacity ... resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate', ... federal courts must give the agency's fact finding the same preclusive effect to which it would be entitled in the state's courts." *Elliott,* 478 U.S. at 799, 106 S.Ct. at 3227 (quoting *United States v. Utah Construction & Mining Co.,* 384 U.S. 394, 422, 86 S.Ct. 1545, 1560,

16 L.Ed.2d 642 (1966)). Therefore, the holding in *Elliott* instructs federal courts to look to the state's courts to determine the preclusive effect of a state agency's factual findings. The Second Circuit has applied the standard found in *Ryan v. New York Telephone Co.,* 62 N.Y.2d 494, 467 N.E.2d 487, 478 N.Y.S.2d 823 (1984), to determine whether, in a Section 1983 action, preclusive effect should be accorded to a New York administrative agency's decisions. The New York Court of Appeals in *Ryan* established the following two-prong test:

> [T]he doctrines of res judicata and collateral estoppel are applicable to give conclusive effect to the quasi-judicial determinations of administrative agencies ... [1] when rendered pursuant to the adjudicatory authority of an agency to decide cases brought before its tribunals employing procedures substantially similar to those used in a court of law [and]. . . .
>
> . . . .
>
> ... [2] the issue must have been material to the first action or proceeding and essential to the decision rendered therein ... and it must be the point actually to be determined in the second action or proceeding such that "a different judgment in the second would destroy or impair rights or interests established by the first".

*Id.* at 500–02, 467 N.E.2d at 489–90, 478 N.Y.S.2d at 825–26 (citations omitted).

The hearing conducted by Stevens satisfies the first prong of *Ryan,* requiring substantial similarity between the procedures employed in the administrative proceeding and those employed in a court of law.

The hearing was conducted by a "deputy or other person" appointed pursuant to N.Y.Civ.Service Law § 75. It appears from the record that O'Malley was afforded all the procedural protections, such as notice, an opportunity to be heard, representation of counsel and the right to confront adverse witnesses, that render an administrative proceeding "substantially similar" to the type of process available in a court of law. In addition, plaintiff has

not alleged in this Court that the manner in which Steven's conducted the hearing was procedurally deficient or in violation of the New York Civil Service Law. Furthermore, plaintiff's appeal of the hearing officer's findings is presently pending in the state court and it is in that forum that plaintiff can litigate the adequacy of the hearing and the merits of the hearing officer's determination. This Court finds that the hearing O'Malley was afforded before his termination was quasi-judicial in nature as required under the *Ryan* test.

■ O'Malley's pre-termination hearing does not, however, satisfy the second prong of *Ryan,* which requires that the issue to be determined in the second action be material and essential to the decision rendered in the first proceeding. O'Malley was charged by NCMC with several instances of employee insubordination. One issue raised in the pre-termination hearing was whether O'Malley violated the chain of command by writing a letter to the County Executive enumerating allegations of his supervisor's misconduct. The crux of O'Malley's present claim is that he was terminated from employment because of the views he expressed in the letter to the County Executive.

The alleged violation of plaintiff's right of free speech was in no way material to the hearing. Not only did the hearing officer refuse to consider the content of the speech, he lacked authority to determine several fundamental questions engendered by the alleged free speech violation. Significantly, Stevens did not, nor was he authorized or even competent to, determine whether the utterance was a form of protected speech, what level of protection it should be accorded, and to what extent, if any, plaintiff's rights were violated. In addition, Stevens did not balance O'Malley's free speech right with the employer's interest in maintaining an efficient, orderly environment conducive to performing public service functions. These determinations, which were not and could not be made by a hearing officer, are necessary to the resolution of the present case and must be considered by this Court.

Therefore, O'Malley's present claim does not merely turn on the resolution of one issue of fact which was already determined by a hearing officer, but rather it involves analysis of whether, and to what extent, O'Malley's letter writing conduct is protected by the First Amendment. In sum, there is no evidence in the record which would support the conclusion that the alleged free speech violation was "material and essential" to the decision rendered by the judicial hearing officer.

Accordingly, the Court refuses to grant judgment on the basis of the hearing officer's factual findings. Defendants' motions for dismissal, judgment on the pleadings, and summary judgment are all denied.

## II.

■ Defendants' motion, in the alternative, for federal abstention, or for a stay of the action until a decision in the state Article 78 proceeding is rendered, is untenable and therefore denied.

It is well settled law that the doctrine of federal abstention should be used sparingly and in rare circumstances. *Allegheny County v. Frank Mashuda Co.,* 360 U.S. 185, 79 S.Ct. 1060 (1959). Abstention is an "extraordinary and narrow exception to the duty to adjudicate a controversy properly before the court. Abdication of the obligation to decide cases can be justified under this doctrine only in exceptional circumstances." *Id.* at 188–89, 79 S.Ct. at 1063. No extraordinary conditions exist here which would warrant the invocation of federal abstention. This Court is not confronted with a federal constitutional claim premised on an unsettled question of state law where a state court decision on the state law issue would obviate the need to render a constitutional determination. *See Boehning v. Indiana State Employee's Ass'n,* 423 U.S. 6, 96 S.Ct. 168, 46 L.Ed.2d 148 (1975). On the contrary, the present case involves the adjudication of alleged civil rights violations of free speech, which in no way requires the final determination of an Article 78 proceeding initiated for the purpose of reviewing the integrity of the hearing and recommendations of a designated hearing officer.

Additionally, the decision to be rendered in the Article 78 proceeding will not affect

the result reached in the instant action. As discussed above, the issues to be adjudicated in the present case were not addressed in the underlying administrative hearing. Also, because of the differences in the remedies available in this action and the Article 78 proceeding, any decision rendered herein will not necessarily affect the outcome of the Article 78 proceeding. *See Davis v. Halpern*, 813 F.2d 37 (2d Cir. 1987); *Giano v. Flood*, 803 F.2d 769 (2d Cir.1986); *Davidson v. Capuano*, 792 F.2d 275 (2d Cir.1986).

Finally, due to the compelling nature of the issues engendered by the alleged violation of an employee's right of free speech, this Court finds that a stay of the action is inappropriate.

SO ORDERED.